JAMES B. CAINE ex ux. *v.* DRUCILLA M. CANTRELL

[No. 94, September Term, 1976.]

*Decided February 9, 1977.*

*Motion for reconsideration filed March 8, 1977; denied March 18, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Raymond S. Smethurst, Jr.,* with whom were *Sally D. Adkins* and *Adkins, Potts & Smethurst* on the brief, for appellants.

*Hamilton P. Fox, Jr.,* for appellee.

*Amicus curiae* brief filed by Department of Natural Resources, *Francis B. Burch, Attorney General, Warren K. Rich* and *John B. Griffith, Assistant Attorneys General,* on the brief.

SINGLEY, J., delivered the opinion of the court. ELDRIDGE, J., concurs in part and dissents in part and filed an opinion concurring in part and dissenting in part at page 400 *infra.*

On two occasions in the recent past, in *Department of Natural Resources v. Ocean City,* 274 Md. 1, 332 A. 2d 630 (1975) and *Department of Natural Resources v. Cropper,* 274

Md. 25, 332 A. 2d 644 (1975), we have considered the relative rights of the private landowner and the public as regards the beach at Ocean City, Maryland. While this case presents a somewhat different factual pattern which controls the result, it is in the same area of controversy.

The appeal is from an order of the Circuit Court for Worcester County, entered 28 October 1974 (the First Order), which, as amended at the request of the parties, was made interlocutory, and declared that a parking structure erected in the bed of a public street adjacent to an ocean front lot owned at time of trial by the appellants, James B. Caine and Joyce W. Caine, his wife, should be abated as a public nuisance, and from a second order entered by the same court on 14 November 1975 (the Second Order), which declared that a house erected on the lot owned by the Caines should be abated as a public nuisance. An appeal was taken by the Caines to the Court of Special Appeals. We granted certiorari before the matter was considered by that court. We propose to affirm the First Order entered below, but to modify the Second Order and affirm it as modified.

On 7 March 1968, Fountain Corporation and I. W. Long & Son, Inc. by James B. Caine, filed an application with the Mayor and City Council of Ocean City for a permit to build a one-family frame house on lot No. 1, block 102 of the Fenwick, Maryland plat. The lot, which is located at the northeast corner of Wight Street and English Avenue in Ocean City, is approximately 50 feet wide and 140 feet deep and fronts on the Atlantic Ocean.[1] On 12 March 1968, a building permit was prepared, but withheld until approval of "engineering decision of utilities are approved."[2] The permit was apparently issued on 28 March 1968.

At a date subsequent to the granting of the building permit — apparently in May of 1968 — Caine sought and

---

1. The plat of Fenwick, dated 1940 and revised in 1966, shows that lot No. 1 as originally laid out had a depth of 200 feet, but by 1966 had a depth of about 140 feet from the westernmost lot line to mean low water.

2. This related to the manner in which sewer service was to be provided. The problem was resolved by the installation of a septic tank on adjacent property, and later by a connection with a public sewer.

received a permit for the construction of a ramp and parking dock in the bed of English Avenue, a public street which is adjacent to his property on the south. The ramp is some 17 feet wide and 54 feet long. That part of the dock which extends into English Avenue is about 40 feet wide (23 feet wider than the ramp) and 25 feet longer than the ramp, and is built at an elevation of 14 feet. Since English Avenue is only 50 feet wide, it is partially blocked by the ramp and the dock, and access from English Avenue to Wight Street is similarly impaired.

An action which was instituted for declaratory relief in June, 1968, finally came on for trial in April, 1973. By that time, the parties were Mrs. Drucilla M. Cantrell, the former owner of adjacent lot No. 2 in block 102, and the owner of lot No. 11, lying west of lot No. 2, on which is built her residence,[3] as the sole party plaintiff; Mr. and Mrs. Caine and the Mayor and City Council of Ocean City as defendants; and the State of Maryland, Department of Natural Resources, which had entered the fray as amicus curiae.

The trial court, relying on *Adams v. Commissioners of Trappe*, 204 Md. 165, 102 A. 2d 830 (1954); *Perellis v. Mayor & City Council of Baltimore*, 190 Md. 86, 57 A. 2d 341 (1948); *Huebschmann v. Grand Company*, 166 Md. 615, 172 A. 227 (1934); *Townsend, Grace & Co. v. Epstein*, 93 Md. 537, 49 A. 629 (1901), and *Van Witsen v. Gutman*, 79 Md. 405, 29 A. 608 (1894), concluded, and we think quite rightly, that the Mayor and City Council of Ocean City were without authority to grant a permit allowing a private individual to obstruct a public street, thus denying the public the full use to which they were entitled, to gain access to the beach.

Additionally, we observe that the obstruction of a public way is a violation of statute, Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 121, punishable by fine and imprisonment; that Code (1957, 1973 Repl. Vol.) Art. 23 A, § 2 (23) empowers municipal corporations to suppress nuisances, and that Code of Ocean City, Maryland (1972),

---

**3.** At trial Mrs. Cantrell testified that lot No. 2, which was unimproved, had been conveyed to Worcester County.

Charter § C-414 (42) and (43) empowers the City Council to prevent or abate all nuisances and to remove all obstructions from streets, lanes and alleys. *See generally* W. Prosser, Torts § 88 (4th ed. 1971); 58 Am. Jur. 2d *Nuisances* §§ 7-8, at 561-64 (1971).

For this reason, we shall affirm the First Order requiring the removal of that part of the ramp and dock which stands in the bed of English Avenue.

We turn now to a consideration of the Second Order, which declared the house erected on lot No. 1, block No. 102 to be a public nuisance and ordered it abated by the Mayor and City Council of Ocean City.

The reasoning adopted by the court to reach this conclusion can be summarized as follows. Relying on our holdings in *Department of Natural Resources v. Cropper, supra*, 274 Md. 25; *Department of Natural Resources v. Ocean City, supra*, 274 Md. 1, and *Board of Public Works v. Larmar Corp.*, 262 Md. 24, 277 A. 2d 427 (1971), and *see Van Ruymbeke v. Patapsco Industrial Park*, 261 Md. 470, 475, 276 A. 2d 61, 64 (1971), the court concluded, and we think quite rightly, that ownership of land lying between mean high water and mean low water is vested in the State of Maryland, and held in trust for public use.

Relying largely on the testimony of George Bert Cropper, a civil engineer with wide experience in the area, the court then found as a fact that there has been no significant change in recent years in the mean high water mark in the part of Ocean City where the Caine house was built, with the result that what became a lot 140 feet in depth from the lot line to the west to mean low water was bisected by the mean high water mark in 1968, leaving a lot extending approximately 70 feet westerly from the mean high water mark to the lot line on Wight Street, which binds the property on the west. After reviewing the evidence in the case we cannot say that this finding of fact was clearly erroneous.

The court then proceeded to a finding of fact, for which we find no support in the record, to resolve an issue not raised

by the plaintiff: that the issuance of the building permit was conditioned upon the grant of an easement 15 feet wide lying immediately west of the mean high water mark for use by the public as a means of access to the beach. It was the court's conclusion that the house, as constructed, encroached upon this easement, a nuisance which the court ordered abated.

It is at this point that the view which we take of the case is at variance with the determination reached below. It will be recalled that the building permit was issued to the Fountain Corporation and I. W. Long and Son, Inc., the co-owners of the lot at the time, and not to Mr. Caine.[4] Construction was commenced in April, 1968, and the house was virtually completed by late summer or early fall of 1968. Title to the property was taken by Mr. and Mrs. Caine, as tenants by the entirety, in September, 1969. There was introduced in evidence an untitled document:

"October 21, 1968

*"TO WHOM THIS MAY CONCERN:*

Lot 1 Block 102

The permit is ussed [sic] in accordance with your agreement with the Council when permit was approved to be resolved with the City Solicitor as follows:

"Subjected to the granting of a 15 foot perpetual public easement on the easterly portion of the plotted lot to the Town of Ocean City for a public beach; and subjected also to access being provided at the

---

4. Mr. Caine testified that when he signed the application, he did not know what interest he had in the property, but that he owned it at time of trial. It would appear that Fountain Corporation and I. W. Long and Son, Inc. contracted to purchase the lot on 28 February 1968; that James B. Caine, Inc. acquired title on 14 May 1968, and on 22 September 1969, conveyed title to James B. Caine and Joyce W. Caine, his wife.

cost of the property owner and in compliance with other City Ordinances.

Signature: James B. Caine

Date 2/24/69"

The record shows that the only condition to which the building permit was subject was the approval of arrangements for sewer service, a condition which was apparently satisfied when the lot was connected to the public sewer.

There is absolutely no evidence that there was ever a formal grant of the easement. Even assuming that the paper was a formal undertaking to make such a conveyance, it should be noted that Mrs. Caine did not join in the execution and that by February, 1969, when Mr. Caine apparently signed the paper, he was not yet the holder of record title, although the house had been completed and the conveyance, if contemplated, would have been a practical impossibility, because the house encroached on the area which would have been subjected to the easement.

What we regard as of greater significance is that the lower court found that the application for the building permit contemplated the construction of a house 40 feet wide and 52 feet deep, and that no application was made for a change in those dimensions. The house as built was 40 feet wide and about 58 feet, 10 inches deep. Additionally, it was set back approximately six feet from Wight Street, and there was a cantilevered porch or deck about 10 feet, four inches wide on the ocean front, overhanging the easternmost line of pilings, so that the structure extended eastward about 75 feet from the western lot line, five feet easterly of what the trial court found to be the mean high water mark. Curiously enough, the structure which was built covered almost precisely the area which would have been included in the easement, had an easement been granted.

Thus, while we conclude that the trial court erred in entering a declaratory order directing that the house be removed because of the failure to meet what it regarded as a

condition upon which the permit was issued, we see no reason why an order should not have been entered directing that any portion of the structure which extends easterly beyond the mean high water mark as found by the court be abated as a public nuisance. This is clearly an encroachment upon the area between mean high water and mean low water, title to which is vested in the State of Maryland, and held for the benefit of the inhabitants of the State, *Board of Public Works v. Larmar Corp., supra,* 262 Md. at 35-36; *Kerpelman v. Board of Public Works,* 261 Md. 436, 445, 276 A. 2d 56, 61 (1971); *United States v. Certain Land in County of Worcester, State of Maryland,* 311 F. Supp. 1039 (D.C. Md. 1970).

We regard the Caines' reliance on Code (1957, 1968 Repl. Vol.) Art. 54, § 46 as misplaced. This provision, until its repeal in 1970, gave the owner of land bounding on navigable waters "the exclusive right of making improvements into the waters in front of his said land," so long as it does not "interfere with the navigation of the *stream of water* into which the said improvement is made." (emphasis supplied)

Even assuming that § 46 was intended to apply to property fronting on the Atlantic Ocean, as well as to navigable rivers and bays, the case law makes it clear that what was contemplated were improvements in the nature of wharves, piers, landing stages and similar structures, *Hess v. Muir,* 65 Md. 586, 598 (1886). *See also* discussion by Judge Finan, for the Court, in *Board of Public Works v. Larmar Corp., supra,* and by Judge Smith, for the Court, in *Van Ruymbeke v. Patapsco Industrial Park, supra.*

Consequently, we shall modify the declaration contained in the Second Order and affirm the order as modified:

"Accordingly it is, this 14th day of November 1975 by the Circuit Court for Worcester County, Maryland, ORDERED AND ADJUDGED:

"1. That such portion of the structure located upon Lot No. 1 in Block No. 102, as shown upon the plat entitled 'Revised and Reassembled Plat No. 4 of Fenwick, Maryland,' as recorded among the land

records of Worcester County, Maryland, in Liber E.W.R. No. 1, at Folio 40, as extends eastward of 70 feet from the western lot line of said Lot No. 1 on Wight Street, be, and the same is hereby declared to be a public nuisance, and should be abated by the Mayor and City Council of Ocean City, Maryland; and

"2. That the Defendants and the Mayor and City Council of Ocean City, Maryland shall each pay one-half the costs of this proceeding."

> *Order of 28 October 1974 affirmed; order of 14 November 1975 modified, and as modified, affirmed.*
>
> *Costs to be paid, one-half by defendants James B. Caine and Joyce W. Caine and one-half by defendants, Mayor and City Council of Ocean City.*

*Eldridge, J., concurring in part and dissenting in part:*

I agree with the majority that the circuit court's order of October 28, 1974, should be affirmed. However, for the reasons set forth in my dissenting opinion in *Dep't of Natural Res. v. Ocean City*, 274 Md. 1, 15-25, 332 A. 2d 630, 639-644 (1975), I would affirm without modification the circuit court's order of November 14, 1975.